1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| THOMAS L. MASSON, JR., | Case No.:  16-cv-916 JLS (JLB) |
| Petitioner, | **REPORT AND RECOMMENDATION RE: PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| E. VALENZUELA, | |
| Respondent. | **[ECF No. 1]** |

Before the Court is the petition for writ of habeas corpus of Thomas L. Masson, Jr., a state prisoner proceeding *pro se* and *in forma pauperis*.  (ECF No. 1.)  Also before the Court is Respondent's answer to the petition (ECF No. 15) and Petitioner's traverse (ECF No. 17).

The Court submits this Report and Recommendation to United States District Judge Janis L. Sammartino pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the Local Rules of Practice of the United States District Court for the Southern District of California.  After a thorough review of the parties' pleadings and supporting documents and for the reasons set forth below, the Court **RECOMMENDS** the Petition be **DENIED**.

## I. FACTUAL BACKGROUND

The following facts are taken from the San Diego County Probation Officer's Report (ECF No. 16-1), the San Diego County District Attorney's Amended Felony Complaint

(ECF No. 16-9), and the San Diego Sheriff's Department Certificate of Release that Petitioner attached to his federal habeas petition (ECF No. 1 at 26).[1] This Court does not presume these facts to be correct, nor does the Court rely on them for its analysis of the merits of Petitioner's habeas claims. Rather, they are set forth here because they provide clarification of the bases of Petitioner's claims, which are, in a vacuum, difficult to untangle.

On July 12, 2012, Petitioner was taken into custody on suspicion of breaking a window in an attempt to enter the home of Philip and Melissa Faber, who were asleep in their home at the time. (ECF No. 1 at 26; ECF No. 16-1 at 2.) Although Petitioner admitted to being in the area of the Faber's home that night, and although some evidence of his possible participation in the event was recovered from his vehicle (ECF No. 16-1 at 2), he was released from custody and no charges were filed at that time. (ECF No. 1 at 26.)

It was only after Petitioner was arrested and charged with four other residential burglaries that the San Diego County District Attorney charged Petitioner with the Faber burglary. (ECF No. 16-9.) On November 25, 2013, the San Diego County District Attorney filed an amended felony complaint charging Petitioner with five counts of first degree burglary in violation of California Penal Code §§ 459 and 460 for five separate burglaries that occurred at five separate residences in 2012 and 2013. (ECF No. 16-9.) The Faber burglary was charged as Count 2. (*Id.* at 2.) With respect to this count, the District Attorney included a California Penal Code § 667.5(c)(21) special allegation that a person other than an accomplice was present in the residence during the commission of the burglary. (*Id.*) This allegation, if found true, would qualify this particular burglary as a "violent felony" under California law. *See* California Penal Code § 667.5(c)(21).

///

///

---

[1] All citations to page numbers in this Report and Recommendation reference the page numbers assigned by the Court's CM/ECF system.

## II. PROCEDURAL BACKGROUND

Petitioner pleaded guilty to all five counts and the special allegations on February 10, 2014.  (ECF No. 16-2 at 1.)  A sentencing hearing was held on April 22, 2014, and Petitioner was sentenced to a total of six years in prison.  (*Id.*)  His sentence comprised the upper term of six years on Count 2 and the middle term of four years on Counts 1, 3, 4, and 5, served concurrently.  (*Id.*)  Petitioner did not appeal his sentence.

On April 13, 2015, Petitioner filed a petition for writ of habeas corpus with the San Diego County Superior Court in Case No. EHC 1038.  (ECF No. 16-3.)  Petitioner raised three claims for relief.  First, Petitioner claimed that he received ineffective assistance of counsel "during fundamental phases of the trial process" when his counsel: (1) failed to discuss with him the full scope of his charges until 45 days after the preliminary hearing; (2) gave Petitioner false and misleading information; (3) failed to file motions to suppress evidence or request to have Petitioner's counts charged separately; and (4) failed to provide investigation or adversarial advocation.  (*Id.* at 3.)  Second, Petitioner claimed that the San Diego County District Attorney engaged in prosecutorial misconduct when he introduced during Petitioner's arraignment a pre-trial services report that contained allegedly erroneous and misleading information.  (*Id.* at 4.)  Third, Petitioner claimed that the trial court committed judicial error during Petitioner's sentencing hearing when it allowed the state to consolidate Petitioner's charges, thereby allowing the District Attorney to charge Petitioner with a violent felony enhancement on Count 2, which Petitioner believes increased his sentence.  (*Id.* at 6.)  On May 12, 2015, the San Diego County Superior Court denied the petition in a reasoned decision on the basis that petitioner failed to state any *prima facie* claim for relief.  (*See* ECF No. 16-4.)

Petitioner filed a subsequent petition for writ of habeas corpus in the California Court of Appeal on August 7, 2015, in Case No. D068590.  (ECF No. 16-5.)  In this petition, Petitioner claimed that he suffered malicious prosecution and misconduct on the basis that the San Diego County District Attorney attached the § 667.5(c)(21) enhancement to Count 2 "with the intent to expose petitioner to greater punishment."  (*Id.* at 3.)

Specifically, Petitioner alleged that the District Attorney "willfully and successfully misrepresented and deceived the trial court with this enhancement allegation in concert with inclusion of a previously uncharged attempted burglary allegation that petitioner was never prosecuted for, nor found guilty of." (*Id.*) In addition, Petitioner claimed that the trial court committed reversible error by accepting and applying the § 667.5(c)(21) enhancement when sentencing Petitioner "without a factual sound basis" for doing so. (*Id.* at 4.) On August 17, 2015, the California Court of Appeal denied the petition in a reasoned decision on the basis that Petitioner failed to provide sufficient evidentiary support for his claims. (*See* ECF No. 16-6.)

Petitioner then filed a petition for writ of habeas corpus in the California Supreme Court on October 26, 2015, in Case No. S230159. (ECF No. 16-7.) Petitioner's claims in this petition were identical to those raised in his habeas petition filed with the California Court of Appeal. (*Id.* at 3–4.) The California Supreme Court denied the petition without comment on January 27, 2016. (ECF No. 16-8.)

Petitioner filed the instant petition on March 16, 2016, in the United States District Court for the Northern District of California, in Case No. 4:16-cv-1299 KAW. (ECF No. 1.) Because Petitioner is challenging a conviction and sentence that were imposed by the San Diego County Superior Court, which lies within the venue of the Southern District of California, the petition was transferred to this Court on April 15, 2016. (ECF Nos. 6, 7.) On April 25, 2016, District Judge Janis L. Sammartino granted Petitioner's motion for leave to proceed *in forma pauperis*. (ECF No. 9.) Respondent filed his answer to the Petition on June 27, 2016. (ECF No. 15.) Petitioner filed his traverse on July 21, 2016. (ECF No. 17.)

## III. SCOPE OF REVIEW

Section 2254 of Title 28 of the United States Code provides the scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in [sic] behalf of a person in custody pursuant to the judgment of a State court only on the ground that

4

he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

In addition, federal habeas corpus claims are subject to the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2254(d). *See Lindh v. Murphy*, 521 U.S. 320, 326–27 (1997) (holding that federal courts reviewing any habeas petition filed in federal court after the April 24, 1996 enactment of AEDPA will apply its provisions). Under the AEDPA, a petitioner must overcome a high threshold to obtain relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Harrington v. Richter*, 562 U.S. 86, 100 (2011).

For purposes of federal habeas corpus review under § 2254(d)(1), "clearly established Federal law" means "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003). The term refers to the holdings, as opposed to the dicta, of Supreme Court decisions. *Id.* at 71 (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A federal habeas court may grant relief under the "contrary to" clause of § 2254(d)(1) if the state court applied a rule different from the governing law set forth in Supreme Court cases or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). The court may grant relief under the "unreasonable application" clause of § 2254(d)(1) if the state court

correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case. *Id.* Habeas corpus relief cannot be granted under § 2254(d)(1) "so long as 'fairminded jurists could disagree'" on whether the state court decision is inconsistent with clearly established federal law. *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

To grant relief under § 2254(d)(2)'s "unreasonable determination of the facts" standard, a petitioner must demonstrate that the factual findings upon which the state court's adjudication of his claims rest, assuming it rests upon a determination of the facts, are objectively unreasonable. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Where there is no reasoned decision from the state's highest court, the federal habeas court "looks through" to the underlying appellate court decision and presumes it provides the basis for the higher court's denial of a claim or claims. *See Ylst v. Nunnemaker*, 501 U.S. 797, 804–06 (1991); *see also Harrington*, 562 U.S. at 99–100 (holding that an unexplained denial of a claim by the California Supreme Court is an adjudication on the merits of the claim and is entitled to deference unless "there is reason to think some other explanation for the state court's decision is more likely").

## IV. DISCUSSION

Petitioner raises the following three claims for relief in his federal habeas petition: (1) ineffective assistance of counsel; (2) prosecutorial misconduct; and (3) judicial error. (ECF No. 1 at 3–10.) In addition, Petitioner raises a Sixth Amendment right to counsel claim in his traverse. (ECF No. 17 at 4-5.)

## A.    Overview of Underlying Premises of Petitioner's Claims

Petitioner asserts several bases for his federal habeas claims that are built on a foundation of key principles that are fundamentally flawed. Because these bases appear repeatedly in Petitioner's claims, and because each is without foundation or merit, the Court addresses each of these supporting principles before turning to the federal habeas claims upon which they are based.

First, Petitioner bases all three of his federal habeas claims on the belief that it was unlawful to charge him with the Faber burglary, which was Count 2 of the complaint against him. Petitioner believes he should not have been charged with this crime because it "stemmed from a previously dismissed allegation of attempted Burglaryy [sic] alleged 15 months prior[, which] was elevated to PC 459, 460, 667.5(c)(21) . . . with no new evidence coming to light." (ECF No. 1 at 7.) Petitioner's premise that it was unlawful to charge him with this burglary is erroneous.

It appears Petitioner believes that jeopardy attaches upon arrest. It does not. *See Crist v. Bretz*, 437 U.S. 28, 38 (1978) (jeopardy attaches when the jury is empaneled and sworn); *United States v. Wilson*, 420 U.S. 332, 343 (1975) (noting that the Double Jeopardy Clause protects against a second *prosecution* for the same offense after an acquittal or conviction). Petitioner's prior arrest and release for the Faber burglary was not a prosecution and acquittal, and therefore it was lawful for Petitioner to be later be arrested for and charged with the commission of the Faber burglary.

To the extent that Petitioner believes no new evidence was discovered to support his second arrest for the Faber burglary, the record indicates that after his arrest for the Rosendahl burglary on October 20, 2013 (Count 5), Petitioner admitted going to the Faber's home and breaking the window. (*See* ECF No. 16-1 at 2–5.) This admission further linked Petitioner to the Faber burglary, and Petitioner does not dispute that he made this admission. Thus, Petitioner's belief that he was charged for the Faber burglary "with no new evidence coming to light" is not only legally irrelevant (*see, e.g. People v. Uhlemann*, 9 Cal.3d 662 (1973) (in California, a magistrate's order dismissing a felony complaint is not a bar to another prosecution for the same offense), but factually incorrect.

Second, Petitioner bases all three of his federal habeas claims on his position that it was improper to charge him with the § 667.5(c)(21) special allegation that attached to the Faber burglary because Petitioner believes (incorrectly) that the enhancement was wrongly based upon certain prior convictions and that it served to enhance his sentence. (ECF No. 1 at 7–9.) Contrary to Petitioner's apparent belief that California Penal Code § 667.5(c) is

a sentence-enhancing provision that was triggered by a defendant's prior violent felonies, it is, instead, a provision that defines which particular felonies constitute "violent felonies" under California law. Subpart (21) of California Penal Code § 667.5(c) makes "[a]ny burglary of the first degree, as defined in subdivision (a) of Section 460, wherein it is charged and proved that another person, other than an accomplice, was present in the residence during the commission of the burglary" a violent felony. Cal. Penal Code § 667.5(c)(21). Thus, the basis for the application of § 667.5(c)(21) is the presence of bystanders within the building that was burglarized and the effect of the application of § 667.5(c)(21) is that the burglary is designated a "violent felony," the result being that, for the sentence for any such conviction, conduct credits are limited to fifteen percent. Cal. Penal Code § 2933.1.

Here, Petitioner was charged with, and pleaded guilty to, five separate counts of first degree burglary of an inhabited dwelling house within the meaning of California Penal Code § 460(a). (*See* ECF No. 16-9 at 2–3.) With respect to Count 2, the Faber burglary, the record indicates, and Petitioner has not disputed, that the Fabers were present in the residence during the commission of the burglary. (*See* ECF No. 16-1 at 2.) Thus, § 667.5(c)(21) is applicable and the Faber burglary is properly classified as a violent felony.

Third, Petitioner bases all three of his federal habeas claims on the belief that his sentence was "illegally" enhanced due to the California Penal Code § 667.5(c)(21) special allegation that attached to the Faber burglary. (ECF No. 1 at 3, 9.) This is incorrect. As stated above, California Penal Code § 667.5(c) is not an enhancement statute.[2] Its purpose, again, is to define the particular felonies that constitute violent felonies under California law. Thus, the result of Petitioner's pleading guilty to the § 667.5(c)(21) special allegation is that the Faber burglary conviction was made a "violent felony." Petitioner did not receive an "enhanced" sentence as a result of his pleading guilty to the § 667.5(c)(21)

---

[2] It appears that Petitioner may be confusing section 667.5 subsection (c) with subsections (a) and (b), which impose additional and consecutive prison terms for defendants with prior violent felony convictions that resulted in imprisonment. However, subsections (a) and (b) were not applied in Petitioner's case.

special allegation. A review of the trial court's Abstract of Judgment shows that no enhancement of any kind was applied to Petitioner's sentence. (*See* ECF No. 16-2 at 1.) Rather, Petitioner received a six-year sentence, which was comprised of the upper term (six years) for the Count 2 burglary and the middle term (4 years) for each of Counts 1, 2, 4, and 5, served concurrently. (*See id.*) While it is true that this violent felony conviction may result in an increased punishment for *future* offenses,[3] the classification of the Faber burglary as a violent felony had no impact on the sentence imposed by the sentencing judge in this case.

Fourth, Petitioner bases his ineffective assistance of counsel and prosecutorial misconduct claims on the belief that two of his prior convictions in Massachusetts provide the basis for his alleged sentence enhancement. (ECF No. 1 at 3–7.) As explained above, Petitioner did not receive an enhanced sentence. Therefore, Petitioner's sentence was not enhanced based on any prior criminal convictions in Massachusetts, or anywhere else. Nor, as addressed above, was the § 667.5(c)(21) special allegation triggered, as Petitioner seems to believe, by any of his prior convictions.

Finally, Petitioner bases his ineffective assistance of counsel and prosecutorial misconduct claims on the belief that his 1996 Massachusetts convictions were misdemeanor property crime convictions and not felony convictions that could be used to increase his sentence under California's prior strikes law. This belief is incorrect. The Massachusetts Criminal Docket that Petitioner attached to his petition shows that in 1996, Petitioner pleaded guilty to: (1) breaking and entering during the daytime with the intent to commit a felony in violation of Massachusetts General Laws chapter 266, section 18; and (2) larceny in a building, ship, vessel, or railroad car in violation of Massachusetts General Laws chapter 266, section 20. (ECF No. 1 at 21.) Chapter 274, section 1, of the Massachusetts General Laws states that "[a] crime punishable by death or imprisonment in the state prison is a felony." Mass. Gen. Laws Ann. ch. 274, § 1. Crimes committed in violation of Massachusetts General Laws Chapter 266 sections 18 and 20—the crimes

---

[3] *See* footnote 2, *supra*.

Petitioner pleaded guilty to in 1996—are punishable by imprisonment in the state prison. Mass. Gen. Laws. Ann. ch. 266, §§ 18, 20. Thus, Petitioner's 1996 Massachusetts convictions were felony convictions and not "misdemeanor property crime" convictions, as Petitioner believes.

## B. Ineffective Assistance of Counsel Claim

Petitioner raises a claim of ineffective assistance of counsel in his federal habeas petition. It is somewhat challenging to distinguish the basis for this claim, but it appears to be two-fold. First, it appears that Petitioner believes he received ineffective assistance of counsel on the basis that his attorney failed to challenge the Count 2 and § 667.5(c)(21) special allegation charges filed against him. (*See* ECF No. 1 at 7–9.) As discussed above, Petitioner takes issue with the fact that the charge filed as Count 2 "stemmed from a previously dismissed allegation of attempted Burglaryy [sic] alleged 15 months prior [which] was elevated to PC 459, 460, 667.5(c)(21) . . . with no new evidence coming to light." (*Id.* at 7.) He also takes issue with the fact that this charge "includ[ed] an illegal enhancement." (*Id.* at 9.)

Second, it appears that Petitioner believes he received ineffective assistance of counsel on the basis that his attorney, while allegedly acting "in collaboration" with the prosecution, forced Petitioner to plead guilty under duress. (*Id.* at 7–9.) Petitioner asserts that "considering the totality and greater punishment that [he] was exposed to" due to the allegedly erroneous Count 2 charge and illegal § 667.5(c)(21) enhancement, his counsel "essentially forced a first time felon into signing a plea agreement with a sentencing judge, under extreme duress." (*Id.* at 7.)

Petitioner expands upon this particular ineffective assistance of counsel claim in his traverse.[4] (ECF No. 17.) He asserts that when he was visited by his attorney sometime in

---

[4] The Court notes that Petitioner's assertion of federal habeas claims for the first time in his traverse is inappropriate and prejudicial, as it unfairly deprives Respondent of the opportunity to respond to arguments that should have been presented in the petition. *Rodriguez v. Holland*, C 11-00935 SBA, 2014 WL 4954775, at * (N.D. Cal. Sept. 30, 2014). While it would be appropriate for this Court to deem these arguments waived, *see Delgadillo v. Woodford*, 527 F.3d 919, 929–30 n.4 (9th Cir. 2008), the Court nonetheless addresses the merits of Petitioner's arguments.

or around December 2013, his counsel "informed him, in no uncertain terms, that the San Diego District Attorney said if [Petitioner] attempted to take these cases to trial, they would have the prior 1996 'burglary' made into a prior 'strike' at Petitioner's sentencing, thus 'doubling up' whatever years in state prison [Petitioner] was sentenced to." (*Id.* at 6.) Petitioner states that "24 years in state prison was the number given." (*Id.*) Petitioner asserts that after arguing with his counsel at a subsequent visit that the prosecution and the trial court could not legally turn a prior misdemeanor property crime conviction from 1996 into a felony strike, his counsel told him that the prosecutor will "do it anyways" and that Petitioner would be "forced to 'take it up on appeal.'" (*Id.*) Petitioner asserts that "this was the coersion [sic] that eventually caused Petitioner to sign [the] plea agreement, while under extreme duress." (*Id.*)

In his answer, Respondent argues that Petitioner's ineffective assistance of counsel claim "is unexhausted, but [because] it lacks merit . . . [it] may be denied by this Court." (ECF No. 15-1 at 13.) Specifically, Respondent argues that while Petitioner "vaguely contends that . . . he was coerced" in part due to his counsel's allegedly deficient performance,[5] Petitioner "has not demonstrated any deficient performance, nor does such seem likely." (*Id.* at 16–17.) Respondent argues further that "[a]s far as can be seen, there was no defense that was likely to be successful" and Petitioner "was unlikely to present a sympathetic picture at sentencing." (*Id.* at 17.) Therefore, Respondent argues, Petitioner's "[c]ounsel's obvious strategy, to get the most he could from pleading guilty while portraying a semblance of remorse, was eminently reasonable." (*Id.*)

### 1. Exhaustion of State Court Remedies

Generally, a habeas petition brought under 28 U.S.C. § 2254 may "not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1). This exhaustion requirement exists as a matter of

---

[5] Respondent acknowledges that Petitioner also attributes this alleged coercion to plead guilty to prosecutorial overreach. (ECF No. 15-1 at 16–17.) The parties' arguments with respect to Petitioner's prosecutorial coercion claim are addressed in section IV.C.2.iii. of this Report and Recommendation.

federal-state comity and assures the state courts of the "initial 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (quoting *Wilwording v. Swenson*, 404 U.S. 249, 250 (1971)). To exhaust his state judicial remedies, a federal habeas petitioner must present the highest state court available with a fair opportunity to rule on the merits of every issue raised in his federal habeas petition. *See* 28 U.S.C. § 2254(b), (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 854 (1999). Thus, in California, a petitioner is required to exhaust his habeas claims in a petition to the California Supreme Court. *See Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir. 1999) (applying *O'Sullivan* to California).

Here, Petitioner failed to exhaust his state court remedies with respect to his ineffective assistance of counsel claim. Petitioner raised this claim only in the habeas petition he filed with the San Diego County Superior Court, (*see* ECF No. 16-3), and not in the habeas petitions he filed with the California Court of Appeal (*see* ECF No. 16-5) and the California Supreme Court (*see* ECF No. 16-7). Thus, the claim is unexhausted because it was not raised through the highest state court. *See O'Sullivan*, 526 U.S. at 854.

Previously, prior to passage of the AEDPA, the United States Supreme Court interpreted the exhaustion requirement to require district courts to dismiss federal habeas petitions that contained even one unexhausted claim. *See Rose v. Lundy*, 455 U.S. 509, 510 (1982). However, section 2254(b)(2) of the AEDPA provides that "[a]n application for writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). Because the exhaustion doctrine exists as a matter of comity, a district court may deny an unexhausted claim on the merits, but only when "it is perfectly clear that the applicant does not raise even a colorable federal claim" and "has no hope of prevailing" before the state courts. *Cassett v. Stewart*, 406 F.3d 614, 623–24 (9th Cir. 2005). "A contrary rule would deprive state courts of the opportunity to address a colorable federal claim in the first instance and grant relief if they believe it is warranted." *Id.* at 624. For the reasons discussed below, this Court may address the merits of Petitioner's unexhausted

ineffective assistance of counsel claim because Petitioner does not raise a colorable federal claim.

### 2. Merits of Petitioner's Claims

Under clearly established federal law, as determined by the Supreme Court, a defendant is entitled to "the effective assistance of competent counsel" before deciding whether to plead guilty. *Padilla v. Kentucky,* 559 U.S. 356, 364 (2010) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). "[C]laims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland*." *Missouri v. Frye*, 566 U.S. 134, 140 (2012) (citing *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)). Under the *Strickland* test, to succeed on an ineffective assistance of counsel claim, Petitioner first must show that his "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). This requires showing that the petitioner's counsel committed errors that were objectively deficient, unreasonable, and "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687.

Petitioner must then show that counsel's deficient performance prejudiced Petitioner's defense during the state trial court proceedings. *Id*. To prevail on this prong, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id*. at 694. In the context of a guilty plea challenge based on ineffective assistance of counsel, a petitioner must show that there is "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017) (quoting *Hill*, 474 U.S. at 59). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694.

Courts need not address both the deficient performance and prejudice components of an ineffective assistance of counsel claim if the petitioner fails to make a sufficient showing of either one. *Id.* at 697.

In the context of federal habeas review, "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential.'" *Harrington*, 562 U.S. at 105 (citing *Strickland*, 466 U.S. at 689). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy." *Strickland,* 466 U.S. at 689. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla*, 559 U.S. at 371.

### i. Failure to Challenge Count 2 and § 667.5(c)(21) Special Allegation Charges

As noted above, Petitioner believes that he was erroneously charged with Count 2 and its alleged illegal enhancement, and he attributes these allegedly erroneous charges, in part, to his counsel's deficient performance.[6] (*See* ECF No. 1 at 7–9.) Specifically, Petitioner contends he received ineffective assistance of counsel when his attorney failed to challenge the Count 2 charge and § 667.5(c)(21) special allegation brought against him. (*See id.* at 7.)

Petitioner's first ineffective assistance of counsel claim fails to satisfy the first prong of the *Strickland* test. Petitioner believes his counsel should have challenged the Faber burglary charges on the basis that Petitioner could not later be arrested and charged with a crime for which he was previously detained and released with no new evidence coming to light. As discussed in section IV.A. of this Report and Recommendation, Petitioner is mistaken. Jeopardy does not attach upon arrest, and therefore it was not illegal or improper for Petitioner to be charged with the commission of the Faber burglary several months after he was initially detained and released in connection with that crime. With respect to the new evidence, Petitioner does not dispute that he admitted going to the Faber home and breaking the window, and he does not argue that he had a defense to this charge that was likely to be successful at trial. Thus, based upon Petitioner's exposure to potential conviction of the Faber burglary with which he was properly charged, it was objectively

---

[6] Petitioner believes the prosecution and trial court also played a part in these erroneous charges being filed against him. (*See* ECF No. 1 at 3–9.) The parties' arguments with respect to these claims are addressed in sections IV.C.2.i. and IV.D. of this Report and Recommendation.

reasonable for Petitioner's counsel to advise Petitioner to plead guilty to, rather than dispute, the charge that he faced.[7]

For the reasons above, Petitioner's unexhausted ineffective assistance of counsel claim fails to raise even a colorable federal claim. Accordingly, under the strict standards of the AEDPA, the Court recommends that the District Court **DENY** this claim on the merits, despite Petitioner's failure to fully exhaust his state judicial remedies with respect to this claim.

### ii. Coercion to Plead Guilty

Petitioner alleges that he received ineffective assistance of counsel on the basis that his attorney forced him to enter into a plea agreement "under extreme duress." (ECF No. 1 at 7.) As discussed above, Petitioner asserts that he was coerced to plead guilty due to "the totality and greater punishment that [he] was exposed to" due to the Count 2 charge and illegal § 667.5(c)(21) enhancement, which Petitioner contends were unlawfully brought against him as a result of his counsel's alleged deficient performance. (ECF No. 1 at 7.)

Under clearly established federal law, "[t]he longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill*, 474 U.S. at 56 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Where, as here, a criminal defendant pleads guilty on the advice of his counsel, the defendant may only attack the voluntary and intelligent nature of his guilty plea by demonstrating that the advice he received from his counsel was not "within the range of competence demanded of attorneys in criminal cases." *Tollett v. Henderson*, 411 U.S. 258, 265–67 (1973). In the context of guilty pleas, the standard for determining whether an attorney's advice fell within this range is the same standard used to determine whether an attorney's performance "fell below an objective standard of reasonableness" under *Strickland v. Washington*. *Hill*, 474

---

[7] Because Petitioner fails to satisfy the first prong of the Strickland test, the Court need not consider the second prong. *See Strickland*, 466 U.S. at 697.

U.S. at 58–59 ("[T]he first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence already set forth in *Tollett v. Henderson*."). A guilty plea entered by a defendant "fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e. g. bribes)." *Brady*, 397 U.S. at 755 (citation omitted).

Here, Petitioner fails to demonstrate that his counsel's advice fell below an objective standard of reasonableness. Absent this plea, Petitioner could have faced a sentence of up to twenty-two years and eight months if convicted of the five first degree burglary charges filed against him. The trial court had the discretion to impose a sentence of up to eleven years and four months,[8] and because Petitioner's 1996 Massachusetts convictions were felony convictions, the prosecution could have used these priors to attempt to double Petitioner's sentence under California's prior strikes law. Thus, if unsuccessful at trial, Petitioner could have faced a sentence nearly four times the length of the six-year sentence he received as a result of his plea. Petitioner makes no argument that he was likely to succeed at trial. Thus, in light of these facts, Petitioner fails to overcome the strong presumption that his counsel's urging him to plead guilty in light of the sentencing judge's

---

[8] The sentencing choices available to the trial court for each count of first degree burglary with which Petitioner was charged are two years, four years, or six years. Cal. Penal Code § 461(a). When a defendant is convicted of two or more felonies, as Petitioner was here, the aggregate term of imprisonment for the multiple convictions is the sum of the principal term, the subordinate term, and any additional applicable term. Cal. Penal Code § 1170.1(a). The principal term is the greatest term of imprisonment imposed by the court for any one of the felony convictions. *Id.* At trial, the San Diego County Superior Court could have imposed the upper limit of six years as the principal term for any one of Petitioner's first degree burglary convictions. The subordinate term for each consecutive offense is one-third of the middle term of imprisonment prescribed for each other felony conviction. *Id.* At trial, the court could have imposed a total subordinate term of five years and four months for the other four first degree burglary convictions. Thus, Petitioner could have faced up to eleven years and four months imprisonment had he failed to prevail at trial.

agreement to grant a significant reduction "might be considered sound trial strategy" that is "well within the range of reasonable professional assistance." *Strickland,* 466 U.S. at 689.

The Court does not doubt that under the circumstances presented, Petitioner felt pressure to choose between two undesirable options: plead guilty and serve a certain, substantial sentence or proceed to trial and risk the imposition of a prison sentence almost four times that length. However, Petitioner's counsel's informed advice to choose the more favorable of the two undesirable options does not amount to an improper threat intended to induce Petitioner to plead guilty.

In sum, Petitioner fails to raise even a colorable claim that he is entitled to federal habeas relief with respect to this ineffective assistance of counsel claim. He fails to show that his counsel's advice "fell below an objective standard of reasonableness," and any such claim is plainly meritless. Therefore, under the strict standards of the AEDPA, the Court recommends that Petitioner's ineffective assistance of counsel claim be **DENIED**.

## C. Prosecutorial Misconduct Claim

The second claim that Petitioner raises in his federal habeas petition is one of prosecutorial misconduct. There are three bases to Petitioner's challenge based up prosecutorial misconduct. First, Petitioner asserts that he "suffered malicious prosecution and misconduct" when the prosecution charged him with violating California Penal Code § 667.5(c)(21) "with the intent to expose petitioner to greater punishment." (ECF No. 1 at 3.) Petitioner contends that "[t]he San Diego County District Attorney willfully and successfully misrepresented and deceived the trial court with this enhancement allegation in concert with inclusion of a previously uncharged attempted Burglary allegation that Petitioner was never prosecuted for, nor found guilty of." (*Id.*) Construing Petitioner's claim loosely, Petitioner seems to allege that it was misconduct for the prosecutor to charge Petitioner with the Faber burglary (Count 2) after he had previously been detained and released for this crime and, because the Faber burglary should not have been included in the District Attorney's complaint, it was also improper to include the § 667.5(c)(21)

enhancement associated with it.

Second, Petitioner contends that the prosecution "willfully and intentionally altered" the pretrial services report introduced during Petitioner's trial court proceedings "in order to aggravate Petitioner[']s prior criminal history (or lack thereof) at his arraignment." (ECF No. 17 at 4–5, 7.) While Petitioner does not explain in his traverse the ways in which the prosecution altered the pretrial services report, it appears this information can be gleaned from the Petition. Petitioner asserts that the pretrial services report referenced a "1996 burglary arrest in Massachusetts" but that this arrest was "in fact a misdemeanor Breaking and Entering . . . and not a felonious burglary as the report suggests." (ECF No. 1 at 5.) Petitioner argues that the prosecution's alleged alteration of the pretrial services report caused the trial court to raise his bail and "placed a shroud of prejudice upon Petitioner." (ECF No. 17 at 5.)

Finally, Petitioner claims that the prosecutor played a role in creating a situation by which Petitioner felt coerced to plead guilty. Petitioner asserts that the prosecutor's threat to "have [Petitioner's] prior 1996 'burglary' made into a prior 'strike'" if Petitioner proceeded to trial was part of "the coersion [sic] that eventually caused Petitioner to sign [the] plea agreement, while under extreme duress." (*Id.* at 6.)

Respondent, in his answer, argues that Petitioner's prosecutorial misconduct claims should be dismissed for three reasons. First, as to the claims based on the filing of the Farber burglary charge and the § 667.5(c)(21) special allegation, and the characterization of Petitioner's criminal history in his pretrial services report, Respondent argues that under the standard established in *Tollett v. Henderson*, Petitioner is precluded from raising a pre-plea claim of prosecutorial misconduct. (ECF No. 15-1 at 12.) Under *Tollett*, Respondent argues, "[f]or a petitioner who pleads guilty in state court, the only challenges [to pre-plea proceedings] available to be presented in federal habeas petitions are with respect to the voluntary and intelligent character of the plea and the advice of counsel to enter such a plea." (*Id.*)

Second, again as to the claims based on the filing of the Farber burglary charge and

the § 667.5(c)(21) special allegation, and the characterization of Petitioner's criminal history in his pretrial services report, Respondent argues that, to the extent they are not precluded, they should still be dismissed because Petitioner "seems simply to be mistaken about the facts" and the state courts' denials of Petitioner's prosecutorial misconduct claim were not in violation of clearly established federal law. (*Id.* at 10, 12–13.)

Third, specifically with respect to the prosecutorial coercion claim, Respondent argues that Petitioner's claim that the prosecution coerced him to plead guilty is both unexhausted and lacking in merit. (*Id.* at 13–17.) Specifically, Respondent argues that Petitioner "has presented no evidence of improper motivation in the choice to prosecute him for the Faber burglary or in the allegation that the crime was committed while the residents were present." (*Id.* at 17.)

### 1. Claim Preclusion

The Court agrees with Respondent that Petitioner's prosecutorial misconduct claims based on everything but prosecutorial coercion are precluded by *Tollett v. Henderson*. It is clearly established federal law that when a criminal defendant pleads guilty on the advice of counsel, he may not thereafter raise independent claims relating to the deprivation of his constitutional rights that occurred prior to the entry of the guilty plea. *Tollett*, 411 U.S. at 267. "Under these circumstances, a prisoner may attack only the voluntary and intelligent character of his guilty plea in habeas proceedings." *Erb v. Yates*, No. 2:07-CV-2601LKKKJNP, 2010 WL 3341650, at *5 (E.D. Cal. Aug. 25, 2010) (citing *Ortberg v. Moody*, 961 F.2d 135, 137 (9th Cir. 1992)).

Here, Petitioner pleaded guilty on the advice of his counsel. Thus, Petitioner is precluded from bringing any pre-plea prosecutorial misconduct claims which do not go to the knowing and voluntary nature of his guilty plea. On this basis alone, the Court recommends that the District Court **DENY** Petitioner's prosecutorial misconduct claims based upon on the filing of the Farber burglary charge and the § 667.5(c)(21) special allegation, and the characterization of Petitioner's criminal history in his pretrial services report.

### 2. Merits of Petitioner's Claims

Even if Petitioner were not precluded from raising some of his prosecutorial misconduct claim, for the reasons discussed below, the claims should still be denied.

### i. Count 2 and the Section 667.5(c)(21) Special Allegation Charges

As noted above, Petitioner appears to allege that the prosecution improperly charged him with Count 2 and the attached § 667.5(c)(21) special allegation "with the intent to expose petitioner to greater punishment." (ECF No. 1 at 3.) Petitioner raised this claim in the habeas petitions that he filed with the California Court of Appeal (ECF No. 16-5 at 3–4) and the California Supreme Court (ECF No. 16-7 at 3–4). The California Supreme Court denied the petition without comment (ECF No. 16-8) and, thus, there is no reasoned decision from the state's highest court. Therefore, this Court "looks through" to the last reasoned state court decision to address Petitioner's claim and presumes that it provides the basis for the higher court's denial of Petitioner's claim. *See Ylst*, 501 U.S. at 805–06. The California Court of Appeal, denying the petition in its entirety and without specific reference to Petitioner's prosecutorial misconduct claims, stated:

> The petition for a writ of habeas corpus has been read and considered by Justices Haller, McDonald, and Aaron.
>
> In April 2014, petitioner Thomas Masson pleaded guilty to multiple counts of burglary and was sentenced to six years in prison. In his petition, Masson claims the court applied a prison prior enhancement pursuant to Penal Code section 667.5, subdivision (c)(21). He contends he never suffered a prior felony conviction or served a prior prison term.
>
> In support of his petition, Masson provides no evidence regarding his sentence other than a superior court order denying his petition for writ of habeas corpus. According to that order, the trial court did not impose any sentence enhancement. Without any evidence concerning Masson's sentence, it is impossible for this court to find any error.
>
> The discussion in the superior court's order suggests Masson may instead be challenging the court's imposition of the upper term of six years for one of the first degree burglary charges. Masson appears to contend that the court improperly relied on a misconception of his criminal history in

Massachusetts as an aggravating factor warranting the imposition of the upper term. Viewing Masson's argument in this light, he still does not state a prima facie case for relief. Without evidence of the trial court's reasoning, we cannot determine whether the court erred in imposing the upper term.

A petitioner seeking a writ of habeas corpus "bears a heavy burden initially to *plead* sufficient grounds for relief, and then to *prove* them." (People v. Duvall (1995) 9 Cal.4th 464, 474.) To satisfy the threshold pleading burden, "[t]he petition should both (i) state fully and with particularity the facts on which relief is sought [citations], as well as (ii) include copies of reasonably available documentary evidence supporting the claim . . . ." (*Ibid.*) By failing to provide sufficient documentary evidence to support his claim, Masson does not meet his burden.

The petition is denied.

(ECF No. 16-6.)

Accordingly, there is no reasoned decision from any state court regarding this claim. In such a situation, the silent denial of the state supreme court is considered to be a decision "on the merits of the claim[]," *Hunter v. Aispuro*, 982 F.2d 344, 347-48 (9th Cir. 1992), and the decision is entitled to AEDPA deference unless "there is reason to think some other explanation for the state court's decision is likely," *Harrington*, 562 U.S. at 100; s*ee Johnson v. Williams*, 133 S.Ct. 1088 (2013). Here, there is no reason to think some other explanation for the state court's decision is likely.

Thus, this Court must conduct an independent review of the record to determine whether the state court clearly erred in its application of Supreme Court law. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002) (citing *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) ("Federal habeas review is not *de novo* when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law.")). In the context of a silent denial of a claim by the California Supreme Court, a petitioner "can satisfy the 'unreasonable application' prong of § 2254(d)(1) only by showing that 'there was no reasonable basis' for the California Supreme Court's decision." *Cullen v. Pinholster*, 563 U.S. 170, 187–88 (2011) (quoting *Harrington*, 562 U.S. at 98).

Petitioner fails to show that the California Supreme Court's silent denial of his claim that the prosecution improperly charged him with Count 2 and the § 667.5(c)(21) special allegation was based on an unreasonable application of clearly established Federal law. The Supreme Court has held that the government retains "broad discretion" as to whom it prosecutes. *Wayte v. United States*, 470 U.S. 598, 607 (1985). "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file . . . generally rests entirely in his discretion." *Id.* (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)). This is because factors such as the strength of the prosecutor's case, the government's enforcement priorities, and the case's relationship to those priorities are "not readily susceptible to the kind of analysis the courts are competent to undertake" and are therefore "particularly ill-suited to judicial review." *Id.*

This does not mean, though, that there are no limits on prosecutorial discretion. The decision to prosecute is still subject to constitutional constraints, and a decision to prosecute "may not be 'deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification' . . . including the exercise of protected statutory and constitutional rights." *Id.* at 608 (quoting *Bordenkircher*, 434 U.S. at 364).

Here, as discussed in section IV.A., it was not illegal or improper for the prosecution to charge Petitioner with the Faber burglary in light of the evidence in the record, including Petitioner's confession that he went to the Faber's home and broke their window, which Petitioner does not dispute. Thus, to prevail on this claim, Petitioner must show that the prosecution's decision to bring the Faber burglary charges against him was deliberately based on an unjustifiable discriminatory standard. Petitioner fails to make this showing. Petitioner does not argue, and the record does not otherwise reflect, that the prosecutor's decision to charge him with the Faber burglary and to include the special allegation that the Fabers were present during the commission of the crime was motivated by a discriminatory intent. Thus, Petitioner fails to show that the prosecution's decision to charge him with Count 2 and the § 667.5(c)(21) special allegation exceeded the broad

discretion afforded to the prosecution under clearly established federal law. For this reason, the Court concludes that the California Supreme Court did not err in its application of controlling federal law when it denied Petitioner's prosecutorial misconduct claim with the respect to the Farber charge and the special allegation filed against him. Accordingly, the Court recommends that the District Court **DENY** this claim.

### ii. Pretrial Services Report

Petitioner additionally alleges that the prosecution "willfully and intentionally altered" the pretrial services report introduced during Petitioner's trial court proceedings "in order to aggravate Petitioner[']s prior criminal history (or lack thereof) at his arraignment." (ECF No. 17 at 4–5, 7.) Petitioner raised this claim in the habeas petitions that he filed with the San Diego County Superior Court (ECF No. 16-3 at 4), the California Court of Appeal (ECF No. 16-5 at 4), and the California Supreme Court (ECF No. 16-7 at 4). The California Supreme Court denied the petition without comment (ECF No. 16-8) and, therefore, this Court "looks through" to the last reasoned state court decision to address Petitioner's claim. *See Ylst*, 501 U.S. at 805–06. Although the California Court of Appeal issued a reasoned decision denying the petition, it did not specifically address his claims of prosecutorial misconduct. (*See* ECF No. 16-6.) Thus, this Court looks through to the San Diego County Superior Court's decision denying Petitioner's habeas petition. The Superior Court, which directly addressed this aspect of Petitioner's prosecutorial misconduct claim, stated:

> According to petitioner: "San Diego County District Attorney's office introduced an erroneous document to judge at court proceedings (see attached pre-trial services report)." "At my arraignment on October 23, 2013 a SD County prosecutor submitted a pre-trial services report to Judge Ervin that contained erroneous, misleading information. In the prior arrest section of the report, there is a listing that I was arrested for a prior Burglary charge in 1996 in the state of [M]assachusetts. The arrest was actually for misdemeanor Breaking and Entering in the daytime, not Felony Burglary as the report suggest. The distinction is not made clear, however the prosecutor is on record stating that I was a 'serial burglar' based on this false information. [¶] This report caused the judge to raise my bail significantly, and prejudiced my case throughout the entire process."

"It is a fundamental principle that reversal for prosecutorial misconduct is not required unless the defendant can show that he has suffered prejudice." (*People v. Uribe* (2011) 199 Cal.App.4th 836, 872.)

"[Penal Code] Section 1473, subdivision (b)(1) provides that a writ of habeas corpus may be prosecuted if '[f]alse evidence that is substantially material or probative on the issue of guilt or punishment was introduced against a person at any hearing or trial relating to his incarceration….'" False evidence is 'substantially material or probative' (*ibid.*) 'if there is a "reasonable probability that, had it not been introduced, the result would have been different. [Citation.]' [Case citation.] The requisite 'reasonable probability is a chance great enough, under the totality of the circumstances, to undermine our confidence in the outcome. [Case citation.] The petitioner is not required to show that the prosecution knew or should have known that the testimony was false. (§ 1473, subd. (c); [case citation].)" (*In re Roberts, supra*, at pp. 741-742.)

The pretrial services report attached to the petition includes: "RECORDS REFLECT THAT THE DEFENDANT WAS ARRESTED FOR THE FOLLOWING: . . . [¶] 1996 – BURGLARY; NO DISPOSITION IS LISTED (MA)." Petitioner does not submit documentary evidence in support of his allegation that this is inaccurate. To the contrary, Attachments A and B to the People's Statement in Aggravation (in the case file) are copies of complaints filed against petitioner in Massachusetts alleging petitioner, on July 16 and 17, 1996, "did break and enter in the day time the building, ship or motor vehicle or vessel of [a victim] with intent to commit a felony therein . . . ."

Even if the pretrial services report were inaccurate, petitioner also does not adequately allege he would not have pleaded guilty and/or been sentenced to six years if not for the report of a 1996 "burglary" on the pre-trial services report.

(ECF No. 16-4 at 2-3.)

Under clearly established federal law, the appropriate standard of review for a claim of prosecutorial misconduct is "the narrow one of due process, and not the broad exercise of supervisory power." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the

culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). This is because "the aim of due process 'is not punishment of society for the misdeeds of the prosecutor but avoidance of an unfair trial to the accused.'" *Id.* (quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). Thus, where the prosecution's conduct is immaterial to either guilt or punishment, even if the prosecution acted in bad faith, there is no violation of a petitioner's federal due process rights. *Id.*

Here, Petitioner fails to demonstrate that the prosecution's alleged mischaracterization of the pretrial services report amounted to a constitutional violation. First, the prosecution did not prepare the pretrial services report. The report was compiled by the Pretrial Services Department of the San Diego County Superior Court. (*See* ECF No. 1 at 19.) Thus, to the extent that the pretrial services report contained erroneous information regarding Petitioner's prior criminal history, the inclusion of this information is not attributable to the prosecution.

Second, the information contained in the pretrial services report had no bearing on either Petitioner's guilt or his punishment. Petitioner pleaded guilty to the charges filed against him. He was not convicted by a court or a jury that relied on the allegedly erroneous pretrial services report in determining Petitioner's guilt. Furthermore, Petitioner's prior criminal history, whether correctly or incorrectly classified in the pretrial services report, was not taken into account for purposes of calculating Petitioner's sentence. As discussed earlier, Petitioner did not receive an enhanced sentence based on his prior criminal history in Massachusetts. His sentence was calculated solely with respect to the five counts of first degree burglary to which he pleaded guilty and nothing more. Thus, even if the pretrial services report was in error,[9] even if the prosecution played a hand in altering the pretrial

---

[9] The Court is not persuaded that using the word "burglary" to describe the offense of "breaking and entering during the daytime with the intent to commit a felony" is erroneous, or even misleading. *See*, *Taylor v. United States*, 495 U.S. 575, 598 (1990) ("Although the exact formulations vary, the generic, contemporary meaning of burglary contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime.") Furthermore, as was addressed above, the 1996 Massachusetts arrest was for a felony offense, not a misdemeanor, as Petitioner asserts.

services report, and even if the prosecution acted in bad faith in doing so, this misconduct was not material to Petitioner's guilt or punishment, and therefore the prosecution's alleged conduct did not result in a violation of Petitioner's federal due process rights. *See Smith*, 455 U.S. at 219.

Petitioner fails to demonstrate a violation of his federal due process rights as a result of prosecutorial misconduct related to the contents of the pretrial services report. Accordingly, Petitioner is not entitled to federal habeas relief as to this claim because the San Diego County Superior Court's denial of this claim was neither contrary to, nor involved an unreasonable application of, Supreme Court precedent, and it was not based on an objectively unreasonable determination of the facts. The Court recommends that the District Court **DENY** this claim.

### iii.    Coercion to Plead Guilty

Petitioner additionally alleges that the prosecution played a role in coercing him to plead guilty. (*See* ECF No. 1 at 7; ECF No. 17 at 6.) Specifically, Petitioner alleges that the prosecution's threat to double his sentence if he proceeded to trial "was the coersion [sic] that eventually caused Petitioner to sign a plea agreement, while under extreme duress." (ECF No. 17 at 6.)

As Respondent correctly points out in his answer (ECF No. 15-1 at 13), this claim is unexhausted. For a federal district court to consider a petitioner's habeas claims, the petitioner must first exhaust all of his available state judicial remedies. *See* 28 U.S.C. § 2254(b)(1)(A). In California, a petitioner fully exhausts his state judicial remedies by fairly presenting his habeas claims in a petition to the California Supreme Court. *See Gatlin*, 189 F.3d at 888. Here, Petitioner failed to present his prosecutorial coercion claim to any of the California state courts. Instead, he raised it for the first time in the habeas petition filed with this Court. (*See* ECF No. 1 at 7.) Thus, the claim is unexhausted. *See O'Sullivan*, 526 U.S. at 854; *Gatlin*, 189 F.3d at 888.

As discussed previously, because the AEDPA's exhaustion doctrine exists as a matter of comity, district courts may deny unexhausted claims in a mixed petition only

16-cv-916 JLS (JLB)

when it is perfectly clear that the claims presented do not raise even a colorable federal claim. *Cassett*, 406 F.3d at 623–24. For the reasons set forth below, this Court may address the merits of Petitioner's unexhausted prosecutorial coercion claim because it is perfectly clear that Petitioner does not raise a colorable federal claim.

The federal due process clause requires that a guilty plea be knowing, intelligent, and voluntary. *McCarthy v. United States*, 394 U.S. 459, 466 (1969); *Boykin v. Alabama*, 395 U.S. 238, 244 (1969). A guilty plea is knowing, intelligent, and voluntary when the defendant has notice of the nature of the charges against him, and he understands the nature of the three critical constitutional rights that will be waived by his guilty plea—the right to a trial by jury, the right to confront his accuser, and the privilege against self-incrimination—as well as the consequences of his plea, including the range of allowable punishment that will result from his plea. *Tanner v. McDaniel*, 493 F.3d 1135, 1146–47 (9th Cir. 2007) (citing *Boykin*, 395 U.S. at 243–44; *Little v. Crawford*, 449 F.3d 1075, 1080 (9th Cir. 2006), *cert. denied*, 551 U.S. 1118 (2007)). A guilty plea "entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e. g. bribes)." *Brady*, 397 U.S. at 755 (citation omitted). For the reasons, discussed in detail below, Petitioner fails to show that his guilty plea was not entered knowingly, intelligently, and voluntarily.

First, Petitioner does not allege that he was unaware of the nature of the charges against him; that he did not understand that by pleading guilty, he would waive his rights to a trial by jury, to confront his accuser, and to protect himself from self-incrimination; or that he did not understand the consequences of his plea. In fact, Petitioner acknowledges in the Petition that he understood that his entering a "plea agreement with the sentencing judge" . . . "effectively prohibited [him] . . . [from] challeng[ing] the penal code 667.5(c)(21) allegation before a jury, thus waiving the petitioner's 6th Amendment liberty

interest which provides for trial by jury and effective assistance of counsel." (ECF No. 1 at 9.)

While Petitioner, in hindsight, states that he "would not have agreed to [plead guilty] knowing [the § 667.5(c)(21)] enhancement was illegal," this assertion does not support a finding that Petitioner's guilty plea was entered unintelligently or unknowingly. It can be inferred from Petitioner's statement that at the time Petitioner pleaded guilty, he believed that he was charged legally with the § 667.5(c)(21) special allegation. And he was. As discussed throughout this Report and Recommendation, there is no meritorious argument to be made that Petitioner was illegally or improperly charged with the Faber burglary, and Petitioner does not contest the fact that the Fabers were home at the time he committed the crime.

Second, Petitioner fails to establish that the prosecution made any threat, misrepresentation, or promise that, by its nature, had no proper relationship to the prosecutor's business. *See Brady*, 397 U.S. at 755. While Petitioner may have felt pressured to plead guilty based on the prosecution's threat to "double up" his sentence if the case proceeded to trial, under the circumstances of this case, any such threat by the prosecution would not have been improper. As discussed in section IV.A., above, Petitioner's prior Massachusetts convictions were in fact felonies and not "misdemeanor proper crimes," as Petitioner asserts. Thus, under California's prior strikes law, it was not improper for the prosecution to attempt to use these prior felony convictions to enhance Petitioner's sentence, if he opted against pleading guilty. The Court does not doubt that this placed Petitioner in a difficult position—plead to a substantial, but certain, prison term or risk the imposition of a prison sentence almost four times that length—but it was within the prosecutor's authority to exercise this discretion. Any statement by the prosecutor that he would seek to double Petitioner's sentence would not amount to improper threats, misrepresentations, or promises having no proper relationship to the prosecution's business.

For the reasons discussed above, the prosecutor's conduct in this case did not amount

to coercion. Petitioner fails to demonstrate that the prosecutor made any threat or promise, or exerted any improper influence, that deprived Petitioner of his ability to knowingly, intelligently, and voluntarily enter a guilty plea. Accordingly, Petitioner fails to demonstrate that he is entitled to federal habeas relief with respect to this prosecutorial misconduct claim, and the Court recommends that this claim be **DENIED**.

## D. Judicial Error Claim

The third claim that Petitioner raises in his federal habeas petition is one of judicial error. Specifically, Petitioner asserts that "[t]he trial court[']s acceptance and application of penal code 667.5(c)(21) is . . . a reversible error upon which petitioner is entitled to relief and legal remedy." (ECF No. 1 at 9.) Petitioner further asserts that the court's erroneous application of § 667.5(c)(21) forced Petitioner, "a formerly law-abiding non-violent citizen, into a violent felon." (*Id.* at 7.) Lastly, it appears that Petitioner believes the trial court's allegedly erroneous application of the § 667.5(c)(21) special allegation resulted in the imposition of a greater sentence in connection with the previous felony conviction.[10] (*Id.* at 5.) Although Petitioner does not raise his claim in the context of any specific constitutional violation, this Court interprets it as an alleged due process violation.

Petitioner raised his claim of judicial error in the habeas petitions he filed with the San Diego County Superior Court (ECF No. 16-3 at 6), the California Court of Appeal (ECF No. 16-5 at 4) and the California Supreme Court (ECF No. 16-7 at 6-7). The California Supreme Court denied the petition without comment (ECF No. 16-8) and, thus, there is no reasoned decision from the state's highest court. Therefore, this Court "looks through" to the last reasoned state court decision to address Petitioner's claim and presumes that it provides the basis for the higher court's denial of Petitioner's claim. *See Ylst*, 501 U.S. at 805–06. Although the California Court of Appeal issued a reasoned decision denying the petition, it did not specifically address Petitioner's claim of judicial error. (*See*

---

[10] Although Petitioner raises this claim of judicial error, Respondent neglected to address this issue in his answer. (*See* ECF No. 15.)

ECF No. 16-6.)  The San Diego County Superior Court, denying the petition in its entirety and with specific reference to Petitioner's judicial error claim, stated:

> According to petitioner: "The Court erred in failing to recognize the mitigating circumstances; allowing state to consolidate charges; prejudiced defendant in allowing a violent felony enhancement in controlling case (count 2) implementing sentence for first term [sic] defendant." "Never did the court take in to consideration the defendant's cooperation in resolving these matters quickly."
>
> Petitioner does not adequately allege in what manner the court abused its discretion by taking the above-alleged actions.

(ECF No. 16-4 at 3.)

The Supreme Court has held that the "Fourteenth Amendment does not, in guaranteeing due process, assure immunity from judicial error." *Stein v. New York*, 346 U.S. 156, 181 (1953).  "It is only miscarriages of such gravity and magnitude that they cannot be expected to happen in an enlightened system of justice, or be tolerated by it if they do, that cause [federal courts] to intervene to review, in the name of the Federal Constitution, the weight of conflicting evidence to support a decision by a state court." *Id.*

Here, it was certainly not a miscarriage of justice "of such gravity and magnitude that [it could not] be expected to happen in an enlightened system of justice" for the trial court to allow the prosecution to add a § 667.5(c)(21) special allegation to the Faber burglary.  As previously discussed, it is generally not in the purview of the courts to determine what charges the prosecution may or not bring against a criminal defendant.  *See Wayte*, 470 U.S. at 607 ("[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file . . . generally rests entirely in his discretion." (quoting *Bordenkircher*, 434 U.S. at 364)).  Petitioner does not argue that the prosecution did not have probable cause to charge him with the Faber burglary or to allege that the house was occupied at the time of the burglary.  Thus, Petitioner fails to show that the trial court had any basis to preclude the prosecution from charging him with the Faber burglary and the

§ 667.5(c)(21) special allegation that attached to it.

Furthermore, to the extent that Petitioner claims his sentence was erroneously increased based on the court's "application" of § 667.5(c)(21) in connection with one of his prior felony convictions, this claim is baseless. As discussed above: (1) the § 667.5(c)(21) special allegation was applied in Petitioner's case because the Faber home was occupied by the Fabers at the time of the burglary, not because of any of Petitioner's prior convictions; and (2) § 667.5(c)(21) is not an enhancement statute, and Petitioner did not receive a longer sentence because of its application. Rather, the result of the application of § 667.5(c)(21) is two-fold: it makes the Faber burglary conviction a "violent felony," which may result in an increased punishment for *future* offenses, and it limits Petitioner's good conduct credits. Thus, the court did not impose a longer sentence as a result of the application of § 667.5(c)(21).

For the reasons discussed above, Petitioner fails to establish that the trial court committed any error during Petitioner's trial court proceedings, let alone one that amounted to a violation of Petitioner's constitutional rights. While Petitioner may believe that he is a "law-abiding non-violent citizen" (ECF No. 1 at 7), it was his own actions, not any error by the trial court, that turned him "into a violent felon."

Accordingly, Petitioner is not entitled to federal habeas relief as to his judicial error claim because the San Diego County Superior Court's denial of this claim was neither contrary to, nor involved an unreasonable application of, Supreme Court precedent, and it was not based on an objectively unreasonable determination of the facts. The Court therefore recommends that the District Court **DENY** this claim.

## E. Right to Counsel During Arraignment Hearing Claim

Lastly, in his traverse, Petitioner asserts, for the first time, that he "was never assigned counsel during his arraignment process." (ECF No. 17 at 5.) He claims that he "was only represented by an unidentified woman claiming to be 'an intern for the San Diego County Public Defenders Office.'" (*Id.*) He asserts that because of this, he was denied his Sixth Amendment right to counsel during a critical stage of his proceedings and

was thus denied fairness during his arraignment hearing.  (*Id.*)

The Court recommends that this claim be denied because it is both unexhausted and meritless.  As discussed above, a habeas petition brought under 28 U.S.C. § 2254 generally may "not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1).  Petitioner failed to present this Sixth Amendment claim in the habeas petition that he filed with the California Supreme Court.  Thus, this claim is unexhausted.  *See O'Sullivan*, 526 U.S. at 854 (holding that a state prisoner must present his habeas claims in a petition to a state supreme court to satisfy the AEDPA's exhaustion requirement).

Irrespective of the AEDPA's exhaustion requirement, a district court may deny an unexhausted claim on the merits "where it is perfectly clear that the applicant does not raise even a colorable federal claim."  *Cassett*, 406 F.3d at 623-24; *see also* 28 U.S.C. § 2254(b)(2).  Here, Petitioner falls short of raising a "colorable federal claim," therefore allowing this Court to claim on the merits.  While the Supreme Court has made clear that federal habeas relief should be granted when constitutional errors render a trial court proceeding fundamentally unfair, *see Williams*, 529 U.S. at 375, the Supreme Court has not held that a supervised intern of an agency such as a Public Defenders Office does not constitute competent counsel.  Absent such a holding from the Supreme Court, this Court cannot conclude that it was contrary to, or an unreasonable application of, clearly established federal law for a supervised intern to represent Petitioner at his arraignment hearing.  *See Wright v. Van Patten*, 552 U.S. 120, 125–26 (2008) (holding that the state court could not have unreasonably applied federal law if no clear Supreme Court precedent exists).

Petitioner fails to set forth a colorable federal claim.  Accordingly, under the strict standards of AEDPA, this Court cannot grant federal habeas relief on the basis of Petitioner's claim, and the Court therefore recommends that the District Court **DENY** this claim.

///

# V. CONCLUSION

For the reasons outlined above, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) directing that Judgment be entered **DENYING** the Petition.

**IT IS HEREBY ORDERED** that any party to this action may file written objections with the Court and serve a copy on all parties no later than **November 24, 2017**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any Reply to the Objections shall be filed with the Court and served on all parties no later than **December 8, 2017**.

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

Dated: October 27, 2017

*Jill Burkhardt*

Hon. Jill L. Burkhardt
United States Magistrate Judge

16-cv-916 JLS (JLB)